Call the next case please. Case number 11-1529, Pekin Insurance Company v. Equilon Enterprises, LLC. May it please the Court. Good morning, Your Honors. My name is Rich Berglund. I'm here on behalf of the plaintiff appellant, Pekin Insurance Company. I'd like to reserve five minutes for rebuttal. Please proceed. Thank you, Judge. This case comes before you on appeal from the Circuit Court's grant of summary judgment in favor of Equilon Enterprises and Shell Oil Company that Pekin Insurance Company has a duty to defend Equilon and Shell against the underlying complaint filed by Valdemar Zablocki. This Court knows the duty to defend is determined by the allegations of the complaint and the terms of the policy. I'll start briefly by describing the Pekin policy in this case. Well, I think we're familiar with it. We're talking about additional insured. Yes. Why don't you tell us what the policy was meant to cover for the named insured? What did it cover for the named insured? For Summit, it covered its operations of the gas station. And when you have an additional insured, you generally... I don't claim to be an expert on insurance, but don't you carve out a portion of the risk that is being covered for the named insured to cover the additional insured? You don't give them the same coverage. But the coverage for the additional insureds has to be based on the coverage for the named insureds. The named insureds aren't given what might be seen as a totally separate policy, are they? No, Your Honor. I agree with you. So, tell us. What was the risk that was being covered for the named insured that was meant to extend to the additional insured? I believe you can read that from the plain and... Well, tell us what it is. Excuse me? Tell us. I can't understand what it is. Well, you can look at the additional insured endorsement itself to see exactly what the coverage is. But in terms of risk, what kind of risk were the additional insureds being covered for? Summits operations of the gas station. Precisely what they were being covered for. As the endorsement specifically says, that the shell defendants are named as additional insureds, but only with respect to liability arising out of your summits, operations, or premises owned or rented by Summit. And the position you're taking, or Pekin is taking, is that the language you just quoted covers only vicarious liability. That's true, Your Honor. Yes, it is. And we believe that the allegations of the underlying complaint, while they do allege simultaneous ownership of the gas station, as the trial court noted, we do not believe that that triggers coverage under the endorsement. Because if you look at the actual allegations that follow the complaint, there's direct negligence alleged against the gas station. That's a separate question. I understand, you know, whether or not the allegations in the complaint alleged vicarious liability. But let's be a little more basic. What's your best case that says the arising out of language is limited to vicarious liability? I think the best case for that would be Roszak, Bowe, Pekin. All the other Pekin cases. All the other Pekin cases, exactly. Granted, they're not directly on point because they deal with, you know, general contractor and subcontractor. Which means that the language in those policies is different from the language in this policy. That is true, Your Honor. Yes, but there's no case in Illinois that's directly on point. Well, to the extent that the language is different, what you're really saying is that we meant to provide coverage just the way we did on these other cases in this case, even though we're not using the same language. Well, the underwriter who drafted the endorsement probably isn't going to... It's your underwriter. Right. And the ambiguity is treated against the language in the policy. I believe so, and I believe that the endorsement here is admittedly broader than the endorsements in Pekin v. Roszak, Pekin v. Bowe, and Pekin v. UPS. But you're trying to limit it just as this Court limited the language in those cases. Even if you don't look at it, though, from the standpoint of vicarious liability, even if you look at it just for liability arising out of summits operations, we still believe that the underlying complaint only alleges liability against Shell and Echelon arising out of Shell's own and Echelon's own operations of the gas station. But doesn't that eventually get sorted out down the line, and we're not going to penalize additional insurers based on language used by the underlying plaintiff's complaint? We have to read it broadly, and if we read it broadly... I understand that, and as I was preparing for this argument, I was trying to figure out why the underlying plaintiff would have pled his case the way that he did. Why didn't he plead vicarious liability? Why did he only plead direct negligence? And the question that follows that is how can you take advantage of that, or why should you be allowed to take advantage of that? Well, I believe you have to read the allegations of the complaint as they are pled, and I think that Mr. Zablocki here purposefully chose not to plead vicarious liability, purposefully chose not to plead liability against Shell and Echelon arising out of summits operations, because he knew that he wouldn't be able to recover on that theory. So I don't think that it's for the court to say, to look at the allegations of the complaint, oh, there's something possibly in those allegations that at some point in time eventually... I'm not suggesting that the allegations in the complaint should be read to include possible claims of vicarious liability, but the question is does the policy provided by Pekin limit its coverage to the additional insurance only for claims arising out of vicarious liability, which is the only way you're going to win, right? Right. It has to be that. Well, that's not the only way we're going to win. I take that back. While our argument is that it's covered, it provides coverage for vicarious liability, if you just want to read the terms of the policy in terms of the endorsement as they are, I think you still win, and that's because there is no, I believe, liability alleged against the Shell defendants for Summit's operations. I do not believe that there are allegations to that effect in the complaint. Wasn't the complaint simply one of a shotgun approach? They don't know who owns the gas station, or at least they claim they don't know who owns it, and they've made the identical allegations against Summit, against Shell Oil, and against Equilon. But they also did not include allegations in there of vicarious liability. If it was a shotgun approach, then they would have included allegations in there of vicarious liability. Here's the other question I have, because vicarious liability, of course, is a mainstream, and your other cases establish that. But vicarious liability generally only arises in the course of a certain relationship between the named insured and the additional insured, right? Right. Is there a case out there that has addressed vicarious liability arising from the relationship of franchise award and a franchisee? Of course, there are plenty of cases that have addressed that, and I believe that the cases that have Give me one that I can track down. I believe I cited the McDonald's case in my brief, and also Olivera v. Remax, which is And also what? The McDonald's case I just heard McDonald, and what else? Illinois Supreme Court case and Remax Remax? is an Illinois appellate court case. Both those cases, there were no allegations of parent agency or actual agency, and therefore the court upheld summary judgment. So did they turn on those McDonald's and Remax, did those cases turn on the language and the policy? Or did it turn on Those are not insurance cases. And that's what I was really looking for. I'm looking for a case where an insurance company has actually insured, just as it insures vicarious liability in a general Contract or subcontractor relationship, insured vicarious liability in the relationship of a franchise award and a franchisee. I mean, I just If there would have been one, I obviously would have cited it in our brief. The whole nature of the relationship. I just don't understand how an insurance company would ever want to do it, and why anybody would ever want to buy that sort of thing. It's almost like a negligent entrustment sort of action, where they should never have granted this franchisee the franchise. That's the grant of a franchise endorsement, which is also an additional insurance endorsement. In the PECOM policy, which is arguably at issue in this case, which I don't think really is, there's no element of Well, there's no, but the question is whether that was a limitation on the coverage, or simply an identification of the parties involved. And in order for you to win, you'd have to be a limitation on the coverage, and not simply an identification of the parties involved. You want to identify the nature of the relationship between the parties, because that sort of makes clear the sort of risk that's being covered. Well, I mean, there's nothing in the underlying complaint that identifies the relationship between the parties. But the plaintiff is probably the least knowledgeable of what that relationship is. He just knows that he got hurt, and he's trying to identify as many possible persons that might have been responsible for his injuries. Right. And you also have some insurance cases where you have the underlying plaintiff who's actually attempting to plead into insurance coverage, where maybe the plaintiff was intentionally struck with a pipe or something, and the plaintiff pleads a separate count of negligence in order to trigger the homeowners. Here's my last question regarding the two bases that you believe the court erred. On the one hand, you say the vicarious liability. On the other hand, you say the relationship. It's limited to the franchise relationship. Yes. And do those stand as separate grounds, as separate bases? I believe they're mutually exclusive. Yes, they are. So let me ask you this. Given that they're mutually exclusive, doesn't the very notion of having two mutually exclusive bases to seek reversal of the trial judge at the very least suggest that the policy is unclear and ambiguous? Absolutely not. I believe both endorsements are clear and unambiguous. And I believe that the trial court Why would you need both of them? Because there could be negligence in the shell defendant's granting of the franchise, as you said, to this particular Give me a fact case where it would be so found. Where would a franchisor be found to be negligent in granting a franchise? Counselor, you're going into your rebuttal time at this point. I'll address your question in rebuttal. Thank you. May it please the court. My name is Sam Henderson, and I represent Equilon Enterprise doing business at Shell. For today, I'm just going to refer to our client just as Shell. The trial court ruling in favor of Shell should be affirmed because Beacon Insurance Company had a duty to defend Shell against the underlying personal injury lawsuit. Before I tell you the reason why there is a duty, it's important for me just to talk briefly about just the background of this case. In January of 2010 We know the background, Counselor. Yes, Your Honor. Just get to the essence of the background that you think helps us. Yes, Your Honor. That's what I was going to do. In 2010, Beacon Insurance filed a complaint for declaratory judgment. And in that, they only identified one provision. And that was that provision that pertained to the franchise, the granting of the franchise. Then we identified the second provision and said that there is a duty under the second provision. It was only nine months later, that's when Beacon Insurance came back and amended its complaint and said, well, even under the second provision, there was no duty. The law is clear that as long as we have to point to a relevant coverage provision and point to facts that are alleged in the charge, then there is a duty. We have identified that here, the plaintiff in the underlying lawsuit alleged that there is alternative or simultaneously ownership of the gas station. Let me stop you right there, Mr. Henderson, very quickly. There's no dispute, or is there a dispute, because we don't have all the cases, that Beacon has a duty to defend Summit Shuttle. There's no, or is Beacon fighting that too? You know, I'm not really in a position to say that, and I'm not just trying not to answer your question. No, no, in terms of what's going on below. Oh, what's in terms of going below. I'm not involved in that underlying, but I know it's going to go to trial in November. But I'm not involved in all the details and the facts of the underlying case. All right. So my point is, Your Honor, is that we have identified allegations. We have identified the relevant provisions. That is enough to say that there is a duty to defend. Beacon Insurance wants this court to say that, well, the plaintiff failed to allege vicarious liability, but we should still assume that there's going to be vicarious liability. The law in Illinois is that we don't look to the draftmanship of the plaintiff in the underlying lawsuit. What we do, we look to the allegation, and we look to the relevant provisions. And the cases that Beacon Insurance are reliable in that case, those are different endorsements. In our case, this is much broader. In our case, it says for any, it covers shell as an addition insurer for any liability arising from summing, operation, ownership, and renting of the premise, the gas station. That is very broad, and that covers, in this instance, it covers Beacon's hazard duty to defend shell. Our best case is Beacon's versus Poulton. In that case, it was the court held that there was coverage of duty to defend because there was a possibility of liability against the addition insurer. Similar in this case. It's a possibility. If the plaintiff is alleging that there's alternatives of simultaneously ownership, there's a possibility that it could be liability. Let me see if I understand what you're saying. What you appear to be saying is that but for the relationship between Summit Shell and the shell companies, shell companies wouldn't be in this lawsuit whatsoever. Yes, Your Honor. And to the extent that Summit Shell has some responsibility for this, the additional insurer should have shelter, take refuge within the policy that Beacon provided. Justice Garcia, that is correct. It's that they, Summit Shell, purchased the insurance to cover shell as an addition insurer for the operation of the station. And the allegations in the complaint alleged that identical claims against both Shell and Summit Shell is that they failed to ventilate fume, that they used equipment in disrepair, that they failed to post warning, that they failed to inspect the fume accumulation. All of that is associated with the operation of the station. So just with all of, just with the facts as alleged, and with point to our best, I'm going to argue our best provision for coverage is that broad provision. Arising out of? Arising out of. That is enough for coverage. Potentially within, at the very most, very potentially. And just so I understand, you're saying that arising out of is enough, and the grantor of a franchise can't take away what the arising out of coverage provides. That's correct, Justice Garcia. And even with the granting of the franchise, the case that Beacon Insurance relied upon, Tencent versus, I think it's Tencent Commercial Company, in that case, the holding should not be applied, in this case, for three points. It's not even binding on this court because it's a Wisconsin case. It's not even binding on the state of Wisconsin because it's unpublished and it has no presidential value. And that was, then we have a second provision. And the third one is that it has no analysis within the decision itself. Exactly. Justice Garcia. I want to ask you a question, maybe you could educate me. Does a duty to defend mean that there's coverage? A duty to defend, meaning that there is, yes, yes, Justice Gore. Does there have to be coverage? I think he's asking is there a duty to indemnify. Oh, no. So coverage, if there's coverage, there's a duty to indemnify. That's, okay. Justice Gordon, the duty to defend is much more broad than the duty of indemnifying. So we don't have to find coverage. We don't have to find coverage in this case. The only, there's one issue is that just there's a duty to defend. Everything else will, hopefully in November when it goes to trial, then that's when the facts will come out in that case. Here it's just, it's much broader, you know, the duty to defend is much broader. And the provision is broad enough to cover that, to cover a duty to defend by Pekins Insurance Company. And even if this, when the court looks at the order from the trial court, there appears that the trial court didn't deny you to look beyond the complaint. Look just at the face, the face of the underlying complaint. Just so it's clear, the trial court had nothing from your side to rule on, did it? It just denied the summary judgment motion from Pekin and then said, I'm entering judgment on behalf of the shell company. We did respond to their motion. But you didn't file an affirmative motion? You just filed a response to their summary judgment? That's correct. You weren't seeking relief within the response that you filed, were you? No. But the judge gave you relief. Well, we were seeking, we wanted the trial court to rule that there was a duty, that just on the face, just on the face of the complaint, there's a duty to defend. In the declaratory action? In the declaratory action. All right. Actually, Your Honor, I want to just, if there's no additional questions, I would like to just thank the court and ask the court to affirm the trial court ruling. Thank you, counsel. Rebuttal? Justice Garcia, quickly, just to start off, after the trial court granted judgment in favor, or actually before the trial court granted judgment in favor of the defendants here, the trial court denied our motion, and the defendants then moved to stand for judgment. Oh, okay. And Judge Hyman granted judgment in their favor. I didn't think it was sui sponte. No, it was not. He denied the motion. That makes sense. Okay. I didn't see that. And then just to pick up where you left off, Justice Garcia, you said what's a fact case where a franchisor could be negligent for granting a franchise? I don't think there's any case in Illinois to that effect. That's not my point. Coming up with something, I mean, I don't know, maybe Summit had a propensity to create vapor clouds that exploded. I'm looking at the risk that the insurance company claims to be covering, and it has to be a real risk. And I'm just wondering what that risk is because I just don't see a risk there. That's what I mean. And if there's no risk, there's no need for insurance. But if the insurance is provided, it's because there's a risk out there that needs to be covered. Right. I believe the risk in this case was defined by the additional insured endorsement that granted coverage to the shell defendants arising out of operations of Summit. I think you're right. Right. So for all those reasons, the reasons stated in our brief, we'd ask that the court reverse the circuit court's judgment in the defendant's favor and grant judgment in favor of Pekin. There's no duty to defend underlying evidence. Thank you. Thank you, counsel. The matter will be taken under advisement.